Thank you. Please be seated. Today's cases will be called as previously announced, and the times will be as allotted to council. The first case today is number 162509, United States v. David Santiago-Colon. May it please the court, John Taddy for the United States. I'd like to reserve two minutes for rebuttal, if I may, Your Honor. You may. Thank you. The district court erred when it precluded the victim in this case from identifying his assailant at a future trial for two reasons. First, this court held in Bonilla-Romero that Puerto Rico's sovereignty status under the double jeopardy clause is irrelevant to pretrial suppression issues. Second, under Bonilla-Romero's collateral estoppel-based test, the local court's suppression of the identification evidence does not bar its admission in this federal case because federal prosecutors were not a party or in privity with a party to the local court proceedings. The defendant agrees that the doctrine of collateral estoppel and not double jeopardy governs this case. Is the issue of privity a factual issue? It's a mixed question of fact and law, Your Honor. The question of privity first relies upon the relationship between the federal prosecutors, or lack thereof, and the local prosecutors at the time of the local proceedings. So do we know enough on this record as to whether there's privity? Well, it seems that yes. The court does have sufficient facts in order to reverse the district court's judgment dismissing the, excuse me, suppressing the evidence and to hold that there was no privity in this case based on the fact that the district court actually made that factual finding. At page four of the addendum, which is the district court's initial suppression order, it said that, and I quote, prosecutors from the U.S. Attorney's Office did not participate in the Commonwealth Court criminal proceedings against Santiago Colon. Their local counterparts, in fact, did. Well, what is that based on? I mean, I understand that they may not have participated directly, but the question was, was there coordination at that time? And I just don't know from the factual record. So we don't know the reasons specifically underlying that factual finding made by the district court, but it was a factual finding that would be subject to review for clear error. In addition, Judge Thompson, I would also say that the standard is not necessarily coordination or communication. Specifically in the Bonilla-Romero opinion, it says whether there's a significant relationship between the federal and Puerto Rico prosecutors during the local suppression hearings. In other cases, such as Charles and Perez-Perez and Sutherland and Gonzalez, this court has talked about substantial control or basically the ability to call the shots in the local proceeding. So based on the district court's factual finding, you could find that there was no privity, but the government's fallback position would be that if the court is uncomfortable with making that factual determination, based on that statement in the district court's opinion, that the appropriate resolution would be to reverse the district court's judgment, suppressing the evidence, and remand to the district court for a further factual development of whether- Could you just help me appreciate, based upon the record that's before us, what is the basis for the district court's factual finding? I would assume that it's based on the filings in the Puerto Rico Court of Appeals and the fact that there was no evidence that was marshaled at any point to suggest that federal prosecutors were involved in the process. So this isn't before the district court, but before this court, the defendant as appellee has proffered a number of pieces of evidence with respect to the local proceedings against Mr. Santiago Colon, and none of that evidence, even as proffered before this court, establishes a close relationship between the federal prosecutors and the local prosecutors at the time of the initial suppression hearing. At best, based on what the defendant has proffered five months after the suppression hearings in local courts, the government attorneys, and again, it is the attorneys, it's not a probation officer, what this court has said in Bonilla-Romero and other cases, it needs to be the prosecutors, not some other representative of the federal government. They didn't put in an appearance in the revocation of probation hearing in Mr. Santiago Colon's other federal case until five months after that hearing, so there's quite simply no evidence to suggest substantial control over the local proceedings, nor would that sort of logically make sense. The local charges against Santiago Colon had to do with attempted murder of a Puerto Rico police officer, was the main focus of those charges in this federal case, this instant federal case, the charges are illegal possession of a firearm by a convicted felon, something that is specifically in the province of the federal government. So as this court has said, in cases like Bonilla-Romero, there was no particular interest of the federal government in a local murder case at the time that those charges were brought, so the sort of variety of factors and inferences that could be made is that there's no evidence of privity, certainly not at this point in time on this record as it exists. I'd like to briefly say something about the timeliness of the government's appeal as well. So the government filed its notice of appeal within 30 days from the November 10th order, which materially amended the original October 4th suppression order. It extended suppression from not only an out-of-court identification and the lineup to an in-court identification. As this court has held in constant and as the federal standard is, there is a big difference between suppressing a pretrial identification or saying that it's unduly suggestive and prohibiting a victim from identifying or a witness from identifying a potential perpetrator at trial. It's a very high standard. There has to be a high degree of prejudice. The Puerto Rico Court of Appeals in its decision suppressing the evidence under Puerto Rico law did not focus on that factor or consider that factor whatsoever. Therefore, what the government is seeking here is a vindication of the appropriate application of federal law and a determination of whether or not under federal standards the defendant should be, excuse me, the victim should be precluded from testifying at trial. And unless this court has any further questions. If you haven't mentioned anything about the certification. The certification. I apologize, Your Honor. I should have led with that. That was an oversight. The government apologizes to this court for failing to file the certification at precisely the time that the notice of appeal was filed. As soon as I found out that the government had failed to file that certification at the time of the appeal, we filed the certification the next day. As we wrote in our brief. Well, you say precisely. It's not a question of not filing it precisely. This wasn't like you missed a day or two. This was like you actually got and filed your brief and still hadn't done it. Yes, Your Honor. That's correct. We had filed our initial brief. And again, we apologize for that. But at all times, the government has complied with the substance of the rule. And this court has said in cases like Crespo-Rios that the important factor is that there is a rigorous evaluation of the merits of the government's appeal. That process was followed in this situation. There were detailed memoranda written by the U.S. Attorney's Office, the Criminal Division, an assistant to the Solicitor General, the Deputy Solicitor General, all recommending a government appeal in this case. The government appeal was not filed until the Solicitor General approved that appeal. This court has said that the 3731 requirements are important, but they are to be liberally construed. And our position is that it does not divest this court of jurisdiction, the fact that the government filed a late certification or filed a certification after it filed its initial brief. And on top of that, Your Honors, this is an important issue. Whether or not the local court can basically control a federal proceeding as a result of suppressing evidence before the federal government was even involved. And I see my time is up. May I finish that thought, Your Honors? It's an important issue for this court to decide whether or not local proceedings can, in effect, control federal proceedings in a federal district court. Thank you. Thank you. Good morning, Mr. McCutcheon. Good morning, Your Honor. May it please the Court. Andrew McCutcheon on behalf of the Appellee, Mr. David Santiago-Colón. The district court entered an order in this case granting Mr. Santiago-Colón's motion to suppress identification evidence in full. Fifty-nine days after the court's clear, unambiguous order, the government filed an interlocutory appeal purportedly under 18 U.S.C. 3731. This appeal fell 29 days outside the mandatory filing period and failed completely to comply with the statute certification requirements. The government's unmitigated failings deprived this court of jurisdiction to consider the instant appeal. Can I ask you how you were prejudiced by this? Your Honor, well, I specifically wasn't. But Mr. Santiago-Colón has remained incarcerated for two years, Judge, and he's been litigating the suppression issue for five years now. So I think the prejudice relates to the delay in the handling of his case at the district court level, the delay that was occasioned by the government, including the additional 59 days that they waited to file the appeal. So I think the prejudice is inherent in that continued delay in Mr. Santiago-Colón's continued incarceration. Your Honor, the primary justification advanced by the government for failing to comply with the certification requirement The majority of circuits who rule on this jurisdictional issue have found that it's not jurisdictional and that it's within the court's discretion as to whether dismissal is an appropriate sanction. The certification requirement, Your Honor? Yes, Judge. I can't dispute that. What I would say, though, is that under Rule 3A, lack of certification can require dismissal. The Eleventh Circuit in Salisbury and the Tenth Circuit in Vega have specifically rejected the factors brought before the court today by the government. In Salisbury, they said that simple negligence is not enough. The Tenth Circuit in Vega said that an inexperienced prosecutor and government assurances regarding taking 3731 appeals seriously is not enough. And those are the exact same justifications that the government has advanced today. And so I think those cases support dismissal on this matter. Let me ask you this. Have there been any motions to release the defendant? We have filed motions at the district court level. They were denied by the magistrate judge who was presiding over that matter twice now, Your Honor. I am not the attorney handling the case. That's the trial attorney that's assigned to the case. So he's been pursuing that matter. I have been assisting him, but we have been litigating that issue at the magistrate judge level. I don't know if it's been appealed up to the district court level, Judge Helpe. But that's certainly something we've been pursuing. And the government has been contesting that release at every stage of the proceedings for more than two years at this point in time. And so that's why this appeal and his continued incarceration and their failure to adhere to the certification requirement does prejudice Mr. Santiago Colon because they are continuing to dispute the fact that he should be released under conditions of bond. I just don't understand the connection between the filing of certification and his release. You're saying that his prejudice is because by failing to file the certification he was incarcerated 30 days or whatever? Correct, Judge. And you're saying that if they had filed it, your client would have been released? If they had filed the certification requirement on time, Your Honor? No, I think it – I think – What difference does it make then? How is that prejudice – I don't understand the prejudice argument. If there's a requirement specifically set forth in the statute and the government fails to adhere to it, they also fail to adhere to the – I understand that they fail to adhere to it. I don't understand the prejudice. Well, Judge, I think the certification requirement is there to assure that the government has gone through the proper channels. They haven't announced why in going through those proper channels they haven't found or they did not find that the certification wasn't filed at the district court level. So I think that belays in part their assurances to this court that they did go through the proper channels and everything was reviewed by the proper parties. And if so, if that is the requirement of the certification, then I think the absence of that certification undercuts their argument that they did review this properly, that they did, you know, think about the delay that it would cause in the case and the fact that Mr. Santiago Colon was incarcerated for that extensive period of time. So that would be my answer to this court's question. Thank you. I won't take any more of your time. Thank you, Judge. I would like to touch on Bonilla-Romero because I know the government relied on that heavily in its brief and it relied on it heavily today during oral arguments. I think Bonilla-Romero is a very different case. If you look at, I believe it's page two of the Bonilla-Romero opinion, the court framed the issue as whether allowing the government to relitigate the suppression issue violated collateral estoppel. Now, that's a very different set of circumstances than the facts facing the court today. The government never asked to relitigate the suppression issue at the federal district court level. In fact, it stipulated to the use of the transcripts. It admitted that it had used, that the Commonwealth Appellate Court had used federal law. It never claimed that there were additional facts or additional witnesses that weren't heard at the Commonwealth level. It never claimed that it didn't receive a full and fair opportunity at the Commonwealth level to litigate the suppression issue. In fact, in its motion in response and opposition to the motion to suppress, what it primarily did is attack the Commonwealth of Puerto Rico Appellate Court's application of Puerto Rico law. So, it asked basically the district court at the federal level to sit in super appellate review of a case that had already traveled up nearly every single rung of the Puerto Rico Appellate Court system. Again, it never asked. Did it ask for the district court to review it or for the district court to ignore it and apply federal law? I think it asked the court to review the transcripts. It never asked for an evidentiary hearing. Again, its arguments were that the Commonwealth Appellate Court had incorrectly applied Puerto Rico law. And by asking the district court to do that, it received essentially exactly what it bargained for. I mean, it never asked the court to engage, as the defendant in Bonilla-Romero did, in a relitigation of the proceedings. It simply asked the court to review the record that it had and reach a different conclusion than the Puerto Rico Appellate Court. And that's why I think Bonilla-Romero is very different than the- Did it ask the court to reach a different result because Puerto Rico law is contrary to federal law and federal law should be applicable? Or was it saying that Puerto Rico courts got Puerto Rico law wrong? Primarily the latter, Your Honor, that Puerto Rico courts got Puerto Rico law wrong. Now, during the hearing, the pretrial conference that the district court scheduled after it granted the motion to suppress, there were issues raised with this court's decision in Constant. But that was never raised in the response in opposition to the motion to suppress. Or at least it wasn't the primary argument that was raised by the government in those proceedings. Again, they never once claimed that there was never a full and fair opportunity in the Commonwealth court to litigate the suppression issue. So they essentially asked the court to do exactly what it did. And now on appeal they're complaining, you know, about the decision that it reached. And so that's why I think- But the district court didn't rule that the evidence in this case warranted the suppression. It ruled that because of the ruling in the Puerto Rico Commonwealth Court, it was invoking a form of issue preclusion. Correct. And what's the basis for that issue preclusion? I mean, we have- it's relatively routine. You can have joint federal state, joint federal Commonwealth task force investigating crime or the like, and then one jurisdiction or the other prosecutes it. What's your basis for saying that collateral estoppel would then apply? Your Honor, so the basis for that and the basis used by the district court is the decision of the Supreme Court in Sanchez-Valle. But that's a double jeopardy case. Correct, Your Honor. But that clarified for all legal and constitutional issues the relationship between the federal government and the Commonwealth government. It solidified that there is indeed an agency relationship between the Commonwealth and the federal government. And once you make that finding, that finding is important for not only double jeopardy but for collateral estoppel and, as I mentioned, all legal and constitutional issues. In fact, the Supreme Court in Sanchez-Valle relied on Wheeler. And that court in that case stated that, quote, a territorial government is entirely a creation of Congress. And, quote, when it enacts and enforces criminal laws to govern its inhabitants, it's not acting as an independent political community like a state but as an agency of the federal government. So if we were to read the Supreme Court's opinion as the Supreme Court going out of its way to stress that it was focused exclusively on the single source doctrine for double jeopardy purposes and that it wasn't making any broad pronouncement in other areas, do you have any other basis for saying that collateral estoppel should be invoked here? Well, so I think if you reject the single sovereign has an application in collateral estoppel, I think it's still a factor that this court needs to look to if it's conducting a privity analysis as well. And then what's different if that's the case, if we're putting Sanchez-Valle to one side and then we're looking at this case, the defendant moved to suppress, so the defendant has the burden of putting in evidence that would show the basis for suppression. What evidence here points to any degree of involvement in the federal government in the actual prosecution of the case in the Commonwealth Courts that isn't routine in literally thousands of cases across the country? Your Honor, I see my time's almost up. If I could just finish answering the court's question. Yes, please. So first of all, the agency relationship contributes to the finding of privity. That doesn't exist in situations in the continent of the United States in actual states. So you're getting this agency relationship from Sanchez-Valle? Correct, Judge. I think the premise of my question, if you would bear with it, is if we put that to one side. Yes, Your Honor. How is this different from thousands and literally thousands of cases? So here there was a Puerto Rico Department of Justice employee that was the prosecutor in the case. The government filed a notice of appearance in Mr. Santiago Colon's campaign and revocation proceedings. In that case, it followed a motion indicating that it was in contact and coordination with the officers investigating the case. I think it may have even been in close contact and coordination with those officers. So, you know, and if you look at the charging structure that was used, they waited two years to file this case in federal court. The government's proffered no explanation for why it waited two years to file charges in federal court after, and it filed only after the Puerto Rico Supreme Court rejected certiorari, after the Commonwealth Appellate Court filed its opinion. And so I think that charging, that coordinated charging structure, also supports privity and communication between the Commonwealth prosecutor and the federal prosecutor, who is actually a Commonwealth employee as well. So all those factors contribute, along with the agency relationship, to finding a privity in this particular case. But even though there may have been privity at some point, I mean, the critical question for us is whether there was privity at the point that the Commonwealth motions were taken. And once again, similar to what I asked your brother, I don't see any evidence in the record to suggest when the federal government got involved with the local prosecution. I would agree with the court that there's nothing on the record that shows exactly when the close contact and coordination began, but I think that the factors that I pointed out certainly suggest that there was communication between the federal prosecutors and the Commonwealth prosecutors, at least during the majority of the proceedings in Commonwealth court. Well, you would hope there would be such communication. I mean, we have a federal system in this country. Federal prosecutors and state prosecutors all the time communicate with each other. Why should that be of any significance at all? Well, because that is a factor that this court can use to find privity, Judge. And then we'd end up finding privity in 10,000 cases in the next year. Well, and I think the situation that sets this case apart from cases perhaps, as I mentioned, in the states is the relationship between Commonwealth prosecutors and federal prosecutors and Sanchez-Valle that says that their authority to prosecute emanates from the same document, from the same source. Sanchez-Valle, you keep mentioning Sanchez-Valle. I seem to recall something in the majority opinion that said that that case was limited to double jeopardy. Correct, Judge. Am I correct? Yes, Your Honor. And how does it carry on to this case? Because the court made equally as clear that the Commonwealth of Puerto Rico has an agency relationship with the federal government. On the double jeopardy case. Well, the holding in Sanchez-Valle was specifically limited to double jeopardy, but the rationale of the court is much broader than that. Once you find that the source to prosecute, the laws are all part of the same umbrella of that they find their basis from the same source. That's an argument that some people can make, but it's not what the Supreme Court said. Well, I think if you look at the cases that the Supreme Court relied on, they all support that notion as well. If you look at Wheeler, if you look at the additional cases cited therein, they all, well, the Supreme Court, too, I would add, did compare Puerto Rico's relationship to the relationship between a municipality and a state. And so once you make that comparison, which the Supreme Court did in Sanchez-Valle. I'm not going to continue beating what seems to be a dead horse. So I'll just tell you your time is up. Thank you, Your Honor. Thank you. Your Honor, I'd first like to address Justice Thompson's question about what the government argued below. And what we said in our response to the motion to suppress was that the Puerto Rico Appeals Court, and this is at appendix page 21, Puerto Rico Appeals Court clearly failed to grant the mandatory deference to the conclusion reached by the trier of fact, that is the Puerto Rico Trial Court, on the sufficiency of the trustworthy evidence presented around the identification of the defendant. So that was legal error based on the deference paid to a trial court under federal standards. On appendix page 30, we start listing numerous federal cases regarding identification evidence that the Puerto Rico Court of Appeals failed to abide by. So the government's argument before the district court was that the Puerto Rico Court of Appeals had failed to apply relevant federal law. And on the preceding pages, before appendix page 30, we also discussed how it seemed to misapply Puerto Rico law itself. But our primary argument was a lack of applying federal law. In the second hearing with respect to the extension of the suppression from an out-of-court identification to an in-court identification, at addendum page 26, this is during the November 10th hearing, we say the Puerto Rico Court of Appeals resolution has no finding at all under United States versus constant that would sustain that the in-court identification was tainted by the pretrial identification. So our primary argument was a lack of appropriately applying federal law. I'm sorry, Erin. So since state constitutions and presumably a commonwealth constitution can afford more protections to a defendant, what difference does it make if they didn't apply federal law in the commonwealth proceeding? Well, it doesn't make a difference with respect to the commonwealth proceeding, other than the fact that it seems that they misapplied their own law. But it makes a great deal of difference with respect to whether, as the defendant argues, that application in the commonwealth proceeding can have a preclusive effect in a federal proceeding. And it shows the dangers of extending – I see my time is up. May I finish answering that question? It shows the dangers of applying the doctrine of collateral estoppel in such a broad way, based on the double jeopardy principles the defendant argues. As we indicated in our 28-J letter with respect to Currier versus Virginia, the Supreme Court appears to be heading away from the application of collateral estoppel in criminal cases, certainly pretrial with respect, which is the procedural posture of this particular case. Currier was a post-trial circumstance in which jeopardy had already attached. And as a result, we urge this Court to reaffirm the case of Bonilla-Romero, as it has done countless times, reverse the judgment of the district court, and either find that there was no privity in this case or remand to the district court for a full factual hearing. Thank you. Thank you.